IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARLENE A. KRULY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 6:21-cv-6181 |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| | ) | JURY TRIAL DEMAND |
| AKOUSTIS TECHNOLOGIES, INC. | ) | |
| | | |
| Defendant. | | |

_____

**NATURE OF THE ACTION**

On behalf of Plaintiff Marlene A. Kruly, (referred to hereinafter as "Plaintiff" or "Marlene Kruly") for her complaint against Akoustis Technologies, Inc. (referred to hereinafter as "Defendant" or "Employer" or "Akoustis") states and alleges as follows:

**Jurisdiction and Venue**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action also involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.

2. This Court has original jurisdiction over this action, and each count, pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to unlawful discrimination by Defendant in Canandaigua, New York in Ontario County, within the Western District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") (Charge number 10205318) which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC") under Federal Charge Number 16GC000961, which resulted in a "Probable Cause Determination" pursuant to which the NYSDHR concluded "PROBABLE CAUSE exists to believe that Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (Determination is attached hereto as Exhibit "**A**").

5. Subsequently, Plaintiff was issued a Right To Sue letter by the EEOC, which was received by Plaintiff fewer than 90 days from the date hereof (Attached hereto as Exhibit "**B**") and Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letter" dated November 24, 2020.

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division, where Plaintiff was employed by Akoustis at all relevant times hereto.

7. The employment practices complained of herein were intentional and malicious in nature.

## PARTIES

8. Plaintiff, Marlene Kruly, a female and resident of Canandaigua, New York in Ontario County, was at all relevant times hereto, an employee of Defendant Akoustis, where she began employment as an "Accounts Payable Specialist" on or about October 2, 2017 until Defendant terminated Plaintiff from her employment on November 21, 2019.

9. Defendant, Akoustis Technologies, Inc., employed Plaintiff at times relevant to this Complaint in Ontario County, New York. Akoustis is a Delaware-formed and North Carolina-based corporation operating in New York State as a "Foreign Business Corporation", where it operates out of its Canandaigua, New York facility.

10. Akoustis describes its business on its website as follows: "…a high-tech BAW RF filter solutions company that is pioneering next-generation materials science to address the market requirements for improved RF filters - targeting higher bandwidth, higher operating frequencies and higher output power compared to incumbent polycrystalline BAW technology deployed today."

11. Akoustis, upon information has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. On December 9, 2019, Plaintiff filed a Verified Complaint with the New York

State Division of Human Rights ("NYSDHR") alleging that Defendant unlawfully discriminated against her in the course of her employment on the basis of her disability.

14. More specifically, Plaintiff alleges that Defendant discriminatorily and intentionally failed to duly accommodate her reasonable requests for accommodation or to even engage in the required interactive process and furthermore, it targeted her for termination and in fact terminated her employment, while she was out of work on short-term disability leave for cancer treatment, shortly after Plaintiff had notified Akoustis of her return–to-work date.

15. Plaintiff went out on short-term disability leave on June 3, 2019 for cancer treatment.

16. Shortly after duly taking her medical leave, Defendant Akoustis sent Plaintiff a letter notifying her of the possibility that it would not keep her job open to her when she was ready to return to work.

17. On or about August 19, 2019, Plaintiff informed Defendant that her chemotherapy treatment was going to last longer than her Oncologist had previously expected.

18. On or about September 13, 2019, Plaintiff notified Defendant Akoustis that she would be able to return to her job as of December 1, 2019.

19. On November 19, 2019, Plaintiff Marlene Kruly provided Defendant with medical documentation highlighting her restrictions upon return to work.

20. Two days after Plaintiff Marlene Kruly submitted to her employer her anticipated restrictions for her return to work, Defendant Akoustis fired her.

21. Pouring salt in the wound of the foregoing, upon information and belief, Defendant removed Plaintiff's health insurance coverage and life insurance coverage during her leave for cancer treatment.

22. Plaintiff, who was the Accounts Payable Specialist for Defendant, informed Defendant Akoustis of her cancer diagnosis in May of 2019.

23. Less than one month after informing Defendant of her diagnosis, in June of 2019, Plaintiff requested an unpaid leave of absence for her cancer, a qualified disability under the Americans with Disabilities Act and the New York State Human Rights Law.

24. Plaintiff had lung cancer, which affected several major life activities including temporarily impeding her ability to work during radiation and chemotherapy treatments, adversely affecting her sleep, creating anxiety and depression, creating severe fatigue and other adverse effects.

25. At the time that Plaintiff took her medical leave of absence, she did not know her expected return date because the date of her return depended upon how well she responded to her radiation and chemotherapy treatments.

26. Defendant approved of Plaintiff's "Extended Leave of Absence" in a letter dated June 13, 2019.

27. Prior to taking a Leave of Absence, Plaintiff had excelled at her job and her performance at her job was more than satisfactory.

28. In the letter dated June 13, 2019 approving of Plaintiff's leave, Defendant's Director of Human Resources actually stated in writing that Akoustis "may need to fill your position while you are out and so there is no guarantee that a position will be available upon your return."

29. Defendant failed to engage in the Required Interactive Process with Plaintiff prior to notifying Plaintiff that by virtue of her medical leave, she may well lose her job.

30. Defendant indeed hired a temporary Accounts Payable Specialist to work from its

North Carolina headquarters in order to cover Plaintiff's absence.

31. Pursuant to letter dated September 5 and September 10, 2019 sent to Defendant, Plaintiff's doctors medically cleared Plaintiff to return to work as of December 1, 2019.

32. On November 5, 2019, Plaintiff's physician determined that she would require the following restrictions upon her return to work: "work hours may be limited to 30-32 hours: may be able to work from home: requires periodic rest during the day: and follow-up medical treatments will be required for the next five years."

33. Meanwhile, Defendant had canceled Plaintiff's health insurance while she remained employed by Defendant; in July of 2019.

34. Defendant also canceled Plaintiff's life insurance policy at or around the same time as the cancellation of Plaintiff's health insurance.

35. Defendant failed utterly to accommodate Plaintiff, her restrictions, or her accommodation of temporary time off even though to have done so would not have been unduly burdensome to Akoustis.

36. Plaintiff could have performed the essential functions of her position with accommodation had Defendant offered to accommodate her, which it failed to do.

37. There is a temporal proximity between Plaintiff's disability and leave, and her termination from employment insofar as Plaintiff was fired during her authorized medical leave, less than 10 days prior to Plaintiff's anticipated return to work, about which Defendant had been apprised.

38. In a letter dated March 30, 2020, Defendant purported to fire Plaintiff as a result of "lack of work" due to the Covid-19 pandemic, which was, on information and belief, shameless pretext for a termination that had already taken place on November 21, 2019, in a

6

failed attempt to "undo" the discriminatory firing of Plaintiff.

39. Notably, in its investigatory Findings, the DHR concluded that "Probable Cause exists to believe that the Respondent (Akoustis) has engaged in or is engaging in the unlawful discriminatory practice complained of." (Exhibit "**A**").

40. But for Plaintiff's lung cancer diagnosis, Defendant would not have terminated Plaintiff Marlene Kruly's employment.

41. Defendant failed utterly to engage in the required interactive process in terms of exploring ways in which Plaintiff could have been accommodated.

42. Plaintiff duly performed the essential functions of her position at all times relevant hereto despite her battle with cancer, and she could have performed the essential functions of her position had Defendant engaged in the interactive process with her, but Defendant chose instead to summarily terminate a valuable employee, simply because she was ill with a serious ADA-qualified disability.

43. At the time of her termination from employment, Plaintiff was suffering from symptoms of her disability and treatment, all of which Akoustis was actually aware of, but affirmatively chose to ignore.

44. Had Defendant even tried to work with Plaintiff, Plaintiff hereby asserts that she could have continued gainful employment at Akoustis, and that such accommodation would not have posed an undue burden upon Defendant.

45. Plaintiff suffered severe emotional distress as a direct and proximate cause of her termination from employment, for which she is entitled to relief in an amount to be proven at or before trial, which amount exceeds the jurisdictional minimum amount required to be in controversy in the present court.

46. Plaintiff suffered actual monetary damages in the form of lost wages following her termination from employment for which she is entitled to relief.

47. Notwithstanding that Plaintiff has satisfied her duty to mitigate her damages by exercising a good faith effort to mitigate, those damages continue to accrue and are expected to be well into the six figures.

48. Plaintiff's costs, including include attorneys' fees continue to accrue.

49. The present Complaint shall have been filed in the Federal District Court, Western District of New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

50. Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

51. As a direct and proximate result of Defendant's discrimination against Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to, the loss of her career at Akoustis, lost wages, lost promotion opportunities, related fringe benefits, and other forms of compensation, as well as loss of career opportunity and advancement, in amounts yet to be determined at or before trial

52. Defendant Akoustis acted in a decidedly callous manner when it cast aside one of its own; a hard-working woman who happened to be afflicted with a serious form of cancer when it failed to accommodate her reasonable requests for accommodation, failed to engage her in the interactive process, shunned her, excluded her, ignored her medically-backed pleas for assistance, and ultimately FIRED her, causing her to lose her income that she depended on, while at her absolute weakest point and at precisely the worst possible time.

## **PRAYER FOR RELIEF**

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or terminating qualified individuals from employment, or discriminating against employees due to disability.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful discrimination on the basis of disabilities.

C. Order Defendant Employer to make whole Marlene Kruly by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole Marlene Kruly by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Marlene Kruly by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay punitive damages as a result of the malice and intentional nature of the discrimination alleged herein, so as to punish Defendant for its knowing discrimination and violation of the law, to the detriment of Plaintiff and Plaintiff's career.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S://  James D. Hartt
**JAMES D. HARTT, ESQ.,**
**Attorney For Plaintiff-Admitted to**
**Practice in WDNY Federal Court**
**6 North Main Street, Suite 200F**
**Fairport, NY 14450**
**Telephone: (585) 490-7100**
**Fax: 1 (716) 299-2006**

ORIGINAL of the foregoing was
filed this 22nd Day of February, 2021 with:
The Clerk of the Federal District Court
Western District New York District, Rochester Division

10