UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

| | |
|---|---|
| MARLENE A. KRULY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AKOUSTIS TECHNOLOGIES, INC.,<br><br>　　　　Defendant. | Case No. 6:21-cv-06181-FPG |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

David I. Klass
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: dklass@fisherphillips.com

Sarah Wieselthier, Esq.
**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Telephone: (908) 516-1050
Facsimile: (908) 516-1051
Email: swieselthier@fisherphillips.com

## **TABLE OF CONTENTS**

                                                                                             Page

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Statement of Material Facts ...................................................................................................... 2

Standard of Review ................................................................................................................... 2

Argument ................................................................................................................................... 3

      I.      Kruly's reasonable accommodation claim fails ........................................................ 3

              A.      Kruly could not perform the essential functions of the Accounts Payable position .................................................................................. 4

                    1.      Kruly's request for an indefinite leave of absence in June 2019 was not reasonable as a matter of law .................................... 4

                    2.      Kruly's other claimed accommodations needed were not reasonable ............................................................................................ 6

              B.      Akoustis did not refuse to accommodate Kruly ........................................... 9

      II.     Kruly's disability discrimination claim similarly fails ............................................ 9

              A.      Kruly was not qualified to perform the essential functions of her job ................................................................................................. 10

              B.      Kruly's employment was not terminated because of her disability ....................................................................................................... 10

              C.      Kruly's benefits ended as a matter of course, not because of her disability ....................................................................................................... 11

      III.    Akoustis has set forth nondiscriminatory bases for its actions ............................. 11

      IV.    Kruly has no evidence of pretext ........................................................................ 12

Conclusion .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................2

*Barton v. Unity Health Sys.*,
   No. 14-CV-6658, 2018 WL 1383229 (W.D.N.Y. Mar. 19, 2018),
   *aff'd*, 768 F. App'x 83 (2d Cir. 2019)....................................................................5, 7

*Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*,
   No. 6:15-6470, 2018 WL 6119777 (W.D.N.Y. Nov. 22, 2018).........................4, 12

*County of Niagara v. Liberty Mutual Ins. Co.*,
   No. 14-cv-737A(F), 2019 WL 1258782 (W.D.N.Y. Jan. 3, 2019).............................2

*Davis v. Bowes*,
   No. 95 Civ. 4765, 1997 WL 655935 (S.D.N.Y. Oct. 20, 1997),
   *aff'd*, 159 F.3d 1346 (2d Cir. 1998).........................................................................9

*Davis v. N.Y.C. Dep't of Educ.*,
   804 F.3d 231 (2d Cir. 2015)....................................................................................10

*Dolac v. County of Erie*,
   No. 17-CV-1214, 2020 WL 2840071 (W.D.N.Y. June 1, 2020),
   *aff'd*, 2021 WL 5267722 (2d Cir. Nov. 12, 2021) ...................................................5

*Federico v. Fed. Express*,
   No. 19-CV-6098, 2021 WL 4846000 (W.D.N.Y. Oct. 18, 2021) ........................6, 8

*Graves v. Finch Pruyn & Co., Inc.*,
   457 F.3d 181 (2d Cir. 2006), *aff'd*, 353 F. App'x 558 (2d Cir. 2009)......................3

*Knope v. Garland*,
   No. 20-2374-cv, 2021 WL 5183536 (2d Cir. Nov. 9, 2021) ....................................5

*Kulak v. City of New York*,
   88 F.3d 63 (2d Cir. 1996).........................................................................................2

*Lalla v. Consolidated Edison Co. of N.Y., Inc.*,
   No. 00 CIV 6260, 2001 WL 456248 (S.D.N.Y. Apr. 30, 2001),
   *aff'd*, 91 F. App'x 701 (2d Cir. 2002)..................................................................7, 8

*LeBlanc v. U.S. Parcel Serv.*,
   2014 WL 1407706 (S.D.N.Y. Apr. 11, 2014)...........................................................3

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .................................................................................................. 3, 4, 12

*Molina v. City of Rochester*,
    No. 13-CV-6607, 2017 WL 1194493 (W.D.N.Y. Mar. 30, 2017),
    *aff'd*, 764 F. App'x 49 (2d Cir. 2019) .......................................................................... 4, 12

*Murray v. Rick Bokman, Inc.*,
    No. 99-CV-15E(SC), 2001 WL 603698 (W.D.N.Y. May, 24, 2001) ......................................... 9

*Needle v. Alling & Cory, Inc.*,
    88 F. Supp. 2d 100 (W.D.N.Y. 2000) ......................................................................................... 8

*Noll v. Int'l Bus. Machines Corp.*,
    787 F.3d 89 (2d Cir. 2015) ......................................................................................................... 3

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) ....................................................................................................... 4

*Picinich v. United Parcel Service*,
    321 F. Supp. 2d 485 (N.D.N.Y. 2004) ........................................................................................ 7

*Schmeichel v. Installed Bldg. Prods., LLC*,
    No. 16-CV-410, 2018 WL 6171750 (W.D.N.Y. Nov. 26, 2018) .......................................... 6, 8

*Vaher v. Orangetown*,
    133 F. Supp. 3d 574 (S.D.N.Y. 2015) ......................................................................................... 2

*Walsh v. N.Y.C. Hous. Auth.*,
    828 F.3d 70 (2d Cir. 2016) ......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 2

Local Civil Rule 56(a)(1) ................................................................................................................ 2

**Other Authorities**

"Employer-Provided Leave and the Americans with Disabilities Act," US EEOC
    May 9, 2016, available at https://www.eeoc.gov/eeoc/publications/ada-
    leave.cfm .................................................................................................................................... 5

"The Americans with Disabilities Act: Applying Performance and Conduct
    Standards to Employees with Disabilities," US EEOC, available at
    https://www.eeoc.gov/facts/performance-conduct.html ............................................................ 6

## **PRELIMINARY STATEMENT**

Plaintiff Marlene Kruly requested and was granted an extended, indefinite leave of absence from her employment with Akoustis, Inc. (the "Company")[1] for medical reasons. After months out of work and Kruly informing the Company that she "wouldn't even dare to guess" at when she could return to work, the Company moved forward with hiring a permanent employee to fill her position, which was the only Accounts Payable Specialist for the entire company. The indefinite leave of absence that Kruly requested was not a reasonable accommodation for her disability as a matter of law, and the Company had no obligation to continue to hold the position, or create a new one for her, when she finally provided an approximate return to work date after the position had been filled during her unprotected leave.

Yet, Kruly filed the instant lawsuit alleging that she was subjected to disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"). Kruly alleges that the Company failed to engage in the interactive process and accommodate her, improperly terminated her benefits while she was out on leave, and wrongfully terminated her employment. However, these claims fail as a matter of law because the undisputed facts show that: (1) the Company provided Kruly with the only accommodation she requested – an indefinite leave of absence – for several months before her continued absence became untenable; (2) her benefits were terminated consistent with the terms of the applicable plan; and (3) her employment was terminated solely because the Company needed to fill the position at a time when she was unable to provide any return-to-work date.

---

[1] Akoustis is a wholly owned subsidiary of Defendant Akoustis Technologies, Inc. (Facts at ¶ 1 n.1.)

## STATEMENT OF MATERIAL FACTS

Defendant relies on the Statement of Material Facts Pursuant to Local Civil Rule 56(a)(1) that has been submitted herewith.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016); *County of Niagara v. Liberty Mutual Ins. Co.*, No. 14-cv-737A(F), 2019 WL 1258782, at *8 (W.D.N.Y. Jan. 3, 2019) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)), *aff'd*, 848 F. App'x 25 (2d Cir. 2021).

"The moving party has the initial burden of demonstrating that no genuine issue of material fact exists." *Id.* (citing *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Once the moving party does so, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (quoting *Brown*, 654 F.3d at 358). The nonmovant does not meet this burden by casting "some metaphysical doubt as to the material facts" or by relying on "conjecture or surmise," but instead must "set forth significant, probative evidence on which a fact-finder could decide in its favor." *Vaher v. Orangetown*, 133 F. Supp. 3d 574, 587 (S.D.N.Y. 2015). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

2

Defendant is entitled to summary judgment on Plaintiff's claims because indefinite leave is not a reasonable accommodation as a matter of law and because the Company's business decision to fill Plaintiff's role permanently when she had not provided any return-to-work date was legitimate and nondiscriminatory.

**ARGUMENT**

Plaintiff alleges that she was subjected to discrimination based on her disability because: (1) the Company failed to engage in the interactive process in regard to her anticipated return to work; (2) the Company cancelled her benefits while she was out on an authorized leave of absence; and (3) because her employment was terminated. (Appendix at Ex. 3, Second Amended Complaint at Count I, Count II).

**I.     Kruly's reasonable accommodation claim fails.**

Disability discrimination claims, including failure to provide reasonable accommodations claims, are evaluated using the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See LeBlanc v. U.S. Parcel Serv.*, 2014 WL 1407706, at *12 (S.D.N.Y. Apr. 11, 2014).

The *McDonnell Douglas* burden-shifting analysis requires that Kruly bear the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie failure to accommodate claim, an employee must show that: "'(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 3d. 92, 97 (2d Cir. 2009)). *See also Graves*

*v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims."); *Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*, No. 6:15-6470, 2018 WL 6119777, at *4 (W.D.N.Y. Nov. 22, 2018) (setting forth the burden shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applicable to claims of disability discrimination under the ADA and NYSHRL); *Molina v. City of Rochester*, No. 13-CV-6607, 2017 WL 1194493, at *4 (W.D.N.Y. Mar. 30, 2017) (same), *aff'd*, 764 F. App'x 49 (2d Cir. 2019).

If Kruly establishes a *prima facie* case, then Akoustis must provide a legitimate, non-discriminatory reason for its decision to terminate her. *McDonnell Douglas*, 411 U.S. at 802. Once Akoustis presents a legitimate, non-discriminatory reason for its decision, Kruly then has the ultimate burden of showing that the company's reason for terminating her is pretextual and that discrimination was the real reason for the decision. *Id.*

Here, Kruly cannot establish a *prima facie* case. Assuming, *arguendo*, that Kruly could satisfy the first two elements of the claim, she cannot satisfy the second two.

**A. Kruly could not perform the essential functions of the Accounts Payable position.**

Kruly was not able to perform the essential functions of her position with or without an accommodation.

    1. <u>Kruly's request for an indefinite leave of absence in June 2019 was not reasonable as a matter of law.</u>

Kruly's only request for an accommodation of any kind was for an indefinite leave of absence starting in June 2019. (Facts ¶ 11.) An indefinite leave of absence, however, is not a reasonable accommodation as a matter of law under the ADA and NYSHRL, and Akoustis had no obligation to accommodate it. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir.

4

2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover"). *See also Knope v. Garland*, No. 20-2374-cv, 2021 WL 5183536, at *5 (2d Cir. Nov. 9, 2021) (finding that employee's excessive and indefinite absences served as a legitimate, nondiscriminatory basis for termination where employee already exhausted all of her leave, had been out of the office for months, and gave no indication of if or when she would be able to return to work); *Barton v. Unity Health Sys.*, No. 14-CV-6658, 2018 WL 1383229, at *6 (W.D.N.Y. Mar. 19, 2018) (J. Geraci), *aff'd*, 768 F. App'x 83 (2d Cir. 2019) (granting summary judgment where the defendant held the plaintiff's position open for seven months "despite the strain her indefinite absence put on her coworkers and Defendant's patients" and holding that "[t]he ADA did not require Defendant to hold Plaintiff's job open forever"); *Dolac v. County of Erie*, No. 17-CV-1214, 2020 WL 2840071, at *3 n.3 (W.D.N.Y. June 1, 2020), *aff'd*, 2021 WL 5267722 (2d Cir. Nov. 12, 2021) (noting that the employee did not show that the requested time off was a reasonable accommodation or that she could perform the essential functions of the job with the requested time off, in part because none of the doctor's notes indicated that time off would have enabled her to recover from her disability and successfully return to work in a reasonable amount of time).

In addition to this binding case law, even the U.S. Equal Employment Opportunity Commission has explicitly stated that an indefinite leave of absence create an undue hardship that does not have to be accommodated. "Employer-Provided Leave and the Americans with Disabilities Act," US EEOC May 9, 2016, available at https://www.eeoc.gov/eeoc/publications/ada-leave.cfm ("Indefinite leave - meaning that an employee cannot say whether or when she will be able to return to work at all - will constitute an undue hardship, and so does not have to be provided as a reasonable accommodation."); "The

5

Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities," US EEOC, available at https://www.eeoc.gov/facts/performance-conduct.html ("21. Do employers have to grant indefinite leave as a reasonable accommodation to employees with disabilities? No. . . .").

### 2. Kruly's other claimed accommodations needed were not reasonable.

Kruly claims that she needed not one but three accommodations in order to potentially return to work on December 1, 2019: (1) as of September 13, 2019, she needed an additional two and a half months of leave (on top of the three and half she had already been given), through December 1, 2019, to return to work in any capacity; (2) a 20-25% reduction in hours worked per week; and (3) the ability to work remotely. (Facts at ¶¶ 33, 36.) Kruly's claim that Akoustis did not engage in the interactive process when she provided this return-to-work date or made verbal requests for additional accommodations after she was replaced fails for similar reasons as her June 2019 request for indefinite leave: the accommodations were not reasonable.

As an initial matter, on September 13, 2019, when Kruly provided notice of a potential return-to-work date of December 1, 2019, there was no position to which Kruly could return. (Facts at ¶¶ 32-33). Akoustis had hired a temporary, then permanent, replacement for Kruly while she was on an unprotected indefinite leave of absence and before she provided notice of her potential return-to-work. (Facts at ¶¶ 25-33). Akoustis had no legal duty to terminate the replacement's employment, to move the replacement to another position, or to create a second Accounts Payable position to accommodate a possible return to the position by Kruly. *See, e.g.*, *Federico v. Fed. Express*, No. 19-CV-6098, 2021 WL 4846000, at *3 (W.D.N.Y. Oct. 18, 2021) (J. Geraci) ("The Second Circuit has made clear, however, that 'an employer need not reassign an employee if no position is vacant' and is not obligated 'to create a new position to accommodate the employee.'")

6

FP 44965620.4

(quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999)); *Schmeichel v. Installed Bldg. Prods., LLC*, No. 16-CV-410, 2018 WL 6171750, at *9 (W.D.N.Y. Nov. 26, 2018) (J. Geraci) (holding that an employer is not obligated to create a new position or more another employee from a previously held position in order to accommodate a disabled employee); *Picinich v. United Parcel Service*, 321 F. Supp. 2d 485, 505 (N.D.N.Y. 2004) ("the ADA does not require UPS to create a new position for Picinich or move another employee from a previously held position in order to accommodate him); *Lalla v. Consolidated Edison Co. of N.Y., Inc.*, No. 00 CIV 6260, 2001 WL 456248, at *3-4 (S.D.N.Y. Apr. 30, 2001), *aff'd*, 91 F. App'x 701 (2d Cir. 2002) (holding that plaintiff was unable to set forth a *prima facie* case where he could not identify a vacant job that he was qualified to perform).

Second, providing notice of a return-to-work date two and a half months further out was not a reasonable accommodation request. Kruly had already been out of work entirely for three and a half months, making her potential leave period (and complete absence from work) six months. *See Barton*, 2018 WL 1383229, at *6 (granting summary judgment where leave of absence was seven months long). Kruly, however, held the only Accounts Payable position at Akoustis, and the Company struggled to complete those job tasks in her absence: her supervisor, Pettitt, attempted to cover the job duties for weeks until the Company determined that it needed to find a replacement. (Facts at ¶ 24). Akoustis is not aware of any case where a court has found that a six-month absence for an employee holding a singular position at a company was a required reasonable accommodation, and it Kruly's burden to provide such legal support.

Third, Kruly claims (without providing any medical documentation) she needed to work reduced hours – 30 to 32 hours per week – instead of 40. This substantial reduction in hours (20-25%) was not reasonable given that there was only one Accounts Payable position at Akoustis and

7

that the position was full-time.[2] Again, as a matter of law, Akoustis had no obligation to change the position to part-time, to hire another individual to perform some of the work associated with the job position, or to shuffle other employee(s)' work duties to provide coverage. *See, e.g.*, *Federico*, 2021 WL 4846000, at *3; *Schmeichel*, 2018 WL 6171750, at *9; *Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 107 (W.D.N.Y. 2000) ("the employer is required neither to create a new position for the employee nor to move another employee from a previously held position in order to accommodate the disabled employee").

Finally, Kruly also claims she would have needed to work remotely. This, too, would not have been a reasonable accommodation even if she had provided medical documentation to support the request. Kruly's job duties *required* her being in the office, which she acknowledged at her deposition. (Facts at ¶ 39.) At the time, the Company was not set up for remote work and was "very much still paper, pen, filing cabinet" with respect to Kruly's duties of printing invoices, obtaining signatures and approvals, and compiling physical packages of paperwork. (Facts ¶ 38.) Akoustis's Chief Financial Officer, Ken Boller, also testified not only to the importance of having the person filling the Accounts Payable position be in the office, but specifically be in the North Carolina headquarters rather than in the New York manufacturing facility. Indeed, it was important for the role to be performed in North Carolina since it was a corporate or shared services function, the checks were cut in North Carolina, and it would allow him to have more control over the process that he was tasked with improving. (Facts ¶¶ 18-20.) Where an accommodation results in the employee not performing essential functions of her position, the accommodation request is not reasonable. *See, e.g.*, *Lalla*, 2001 WL 456248, at *3-4 (finding no support for employee's claim that working from home was a reasonable accommodation where the position required fieldwork);

---

[2] Notably, Kruly testified that she is not sure, *to this day*, that she would even be capable of working a 40-hour workweek. (Facts ¶ 38 n.6.)

8

*Murray v. Rick Bokman, Inc.*, No. 99-CV-15E(SC), 2001 WL 603698, at *6 (W.D.N.Y. May, 24, 2001) ("A reasonable accommodation only applies when the employee is able to remain at work and to perform the essential functions of his job with that accommodation."); *cf. Davis v. Bowes*, No. 95 Civ. 4765, 1997 WL 655935, at *15 (S.D.N.Y. Oct. 20, 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998) ("It is axiomatic that an employee who cannot show up for work cannot perform an 'essential function' of her job.").

Because each of the restrictions or accommodations sought were unreasonable, so too were they not reasonable when combined.

### B.  Akoustis did not refuse to accommodate Kruly.

Kruly also cannot establish the fourth element of her *prima facie* case because Akoustis sought to accommodate Kruly for months.

Analyzed on its own terms, Kruly's claim that the Company failed to engage in the interactive process or accommodate her makes no sense. It is undisputed that Akoustis engaged in the interactive process: Kruly requested a leave of absence and the Company granted that request. (Facts at ¶¶ 8-9). Indeed, Kruly concedes that the *only* accommodation she requested – an indefinite leave of absence – was initially granted by the Company. (Facts at ¶ 11). It was only when Plaintiff stated in August 2019 that she had no idea when she would be able to return that the Company was forced to make the business decision to permanently fill the role going forward. (Facts at ¶ 17).

### II.     Kruly's disability discrimination claim similarly fails.

To establish a *prima facie* case of disability discrimination, Kruly must demonstrate: (1) the Company is subject to the ADA and NYHRL; (2) she is disabled within the meaning of the law or perceived to be disabled by her employer; (3) she was otherwise qualified to perform the

essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)). With regard to the fifth element, Kruly must show that the adverse employment action "took place under circumstances giving rise to an inference of discrimination." *Davis*, 804 F.3d at 235 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)) (internal quotation marks omitted).

Kruly cannot prove the third and fifth elements of her *prima facie* case: that she was qualified to perform the essential functions of her job with or without reasonable accommodation and that her employment was terminated, and her benefits ended, because of her disability.

### A.  Kruly was not qualified to perform the essential functions of her job.

Kruly cannot prove the third element of her *prima facie* because she was not qualified to perform the essential functions of her job with or without accommodation for the same reasons as stated above regarding her reasonable accommodation claim.

### B.  Kruly's employment was not terminated because of her disability.

Kruly's only evidence that her disability caused her termination from employment is that her employment ended while she was on a leave of absence due to her disability. While that may demonstrate she was in a protected class (e.g., that she was disabled at that time), it does not show any causal connection between her disability and the termination of employment.

The fatal flaw in Kruly's disability discrimination claims is the undisputed fact that at the time the Company decided to replace Kruly and fill the Accounts Payable role with another employee on a permanent basis, Kruly could not come to work and could not say when she would be able to work. Kruly went on medical leave on June 3, 2019, at which time she was informed

that the Company "may need to fill your position while you are out and there is no guarantee that a position will be available upon your return." (Facts at ¶¶ 12, 16-17, 26-33.) At the time she applied for a leave of absence, she was unable to provide an estimated return to work date. (Facts at ¶ 14.) Over the months that followed, she remained unable to work and, as of August 19, 2019, "wouldn't even dare to guess" an approximate date when she could return. (Facts at ¶¶ 16-17.) This remained true in early September 2019, when the Company made the final decision to permanently fill the Accounts Payable position for business reasons. (Facts at ¶ 29.)

The facts show that Akoustis took multiple steps to accommodate Kruly's disability. Only after Kruly had been on leave for several months and told the Company that she did not know when she could return did Akoustis move forward with hiring a permanent replacement. Accordingly, Kruly cannot establish that she was separated because of her claimed disability.

### C. Kruly's benefits ended as a matter of course, not because of her disability.

Kruly also alleges that she was subject to discrimination because her benefits ended while she was on her indefinite leave of absence. Kruly, however, *agrees* that her eligibility for benefits ended pursuant to the terms of Akoustis's healthcare plan, and that such terms apply broadly to all employees. (Facts at ¶ 12.) Thus, there are no facts supporting her claim that her benefits ended because of her disability. Indeed, Akoustis paid for Kruly's share of her benefits premiums for a time while she was on leave, belying any claim of discrimination. (Facts at ¶ 13.)

### III.    Akoustis has set forth nondiscriminatory bases for its actions.

Assuming *arguendo* that Kruly were able to work and set forth a *prima facie case* – which she cannot do – the Company had a legitimate, nondiscriminatory reason for its decision: in early September 2019, Akoustis hired a permanent replacement for the sole Accounts Payable position while Kruly was on an indefinite leave of absence and shortly after Kruly informed the Company

11

that she still "couldn't even dare to guess" at when she would be able to return to work. (Facts at ¶¶ 27, 29.) This decision effectively ended Kruly's employment. When Kruly subsequently notified Akoustis of a potential return-to-work date of December 2019, the Accounts Payable position was filled and there was no other position open for which she was qualified.[3] *See, e.g.*, *Molina*, 2017 WL 1194493, at *4 (citing *McBride v. BIC Consumer Prods. Mfg.*, 583 F.3d 92, 96 (2d Cir. 2009)) (explaining that, under the burden shifting framework set forth in *McDonnell Douglas*, if plaintiff meets the burden of establishing a *prima facie* case, the defendant need only articulate a legitimate, non-discriminatory reason for its actions).

IV.     **Kruly has no evidence of pretext.**

Kruly has no evidence of pretext. "'Pretext may be demonstrated either by presentation of additional evidence showing that the employer's preferred explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie* case, without more.'" *Byrd*, 2018 WL 6119777, at *5 (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)) (holding plaintiff could not establish pretext when the only evidence in support of her discrimination claim was her own allegations of disparate treatment).

It is undisputed that, when Kruly requested an indefinite leave of absence due to a medical issue, the Company immediately granted it for three months and kept in contact with Kruly for months to inquire into her health and possible return to work. (Facts at ¶¶ 9, 14-17). Additionally, the Company paid for her health benefits for a period after she went on her leave of absence even though it was not required to do so. (Facts at ¶ 13.) These actions are not those of a company that is seeking to discriminate against an individual based upon her disability, but of a company that is actively trying to accommodate a sick employee and allow her the time needed to recover before

---

[3] The Company also set forth a basis for the cessation of Kruly's employment benefits when she went on a leave of absence: this was the established procedure the Company used. (Facts ¶ 12.)

returning to work. It was only when Kruly stated in August 2019 that she had no idea when she would be able to return that the Company was forced to make the business decision to permanently fill the role going forward since Plaintiff was the sole person completing the Accounts Payable job duties and responsibilities. (Facts at ¶ 29.)

## CONCLUSION

There is no evidence to suggest that Kruly was subjected to any mistreatment at work because of her disability or need for an accommodation, or that her employment was terminated for any reason other than a need to permanently fill the Accounts Payable role while Kruly's leave of absence remained indefinite. In fact, the undisputed evidence shows the contrary. Kruly's claims of disability discrimination under the ADA and NYSHRL consequently fail as a matter of law. The Court should therefore grant Defendant summary judgment and dismiss the Second Amended Complaint, in its entirety, with prejudice.

Respectfully submitted,

/s/ *David I. Klass*
David I. Klass
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: dklass@fisherphillips.com

Sarah Wieselthier, Esq.
**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Telephone: (908) 516-1050
Facsimile: (908) 516-1051
Email: swieselthier@fisherphillips.com

*Attorneys for Defendant*

Dated:  September 30, 2022