UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARLENE KRULY,

                              Plaintiff,

v.

                                                                                  Case # 21-CV-6181-FPG

                                                                                     DECISION AND ORDER

AKOUSTIS TECHNOLOGIES, INC.

                              Defendant.
_____

## INTRODUCTION

On February 22, 2021, Plaintiff Marlene Kruly ("Plaintiff") brought this action against her former employer, Defendant Akoustis Technologies, Inc. ("Defendant"), alleging disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq*, and the New York State Human Rights Law ("NYSHRL"). ECF No. 1. Plaintiff alleges that Defendant (i) discriminated against her by terminating her employment because of her disability and (ii) failed to reasonably accommodate her disability. *Id*.

On September 30, 2022, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 44. On November 18, 2022, Plaintiff responded. ECF No. 48. On December 9, 2022, Defendant replied. ECF No. 49. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

1

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cnty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source). "Only when reasonable minds could not differ as to the import of evidence is summary

judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. *Anderson*, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").

**FACTUAL BACKGROUND**

From October 2, 2017 until September 2019, Defendant employed Plaintiff as a full-time Accounts Payable Specialist on an at-will basis. ECF No. 44-2 at 2. Defendant is an acoustic wave technology company that designs, develops, and manufactures radio frequency filters. *Id*. Except for a short period at the beginning of her employment, Plaintiff was Defendant's sole Accounts Payable Specialist. *Id*. Defendant has its corporate headquarters in Huntersville, North Carolina and operates a manufacturing facility in Canandaigua, New York. *Id*. Plaintiff was based in the New York facility and responsible for Accounts Payable functions at both locations. *Id*. Plaintiff reported to Dave Pettitt ("Pettitt"), Plant Financial Controller. *Id*.

On May 13, 2019, Pettitt, Ken Boller–Defendant's Chief Financial Officer–and Holly Johnson–Defendant's Director of Human Resources–discussed a proposed transfer of Plaintiff's

3

Accounts Payable position to Defendant's corporate headquarters, and exchanged emails discussing such a transfer shortly thereafter. *Id.* at 6. Sometime in May 2019, Plaintiff informed Defendant that she had been diagnosed with lung cancer. *Id*. at 2.

On June 11, 2019, Plaintiff emailed Pettitt and Johnson that she intended to take a leave of absence and estimated that the timeframe may be "approximately 3 months give or take […] [a]ll depending on how things go with treatment." ECF No. 48-1 at 215. On or about June 12, 2019, Plaintiff formally requested an extended leave of absence in connection with her diagnosis and treatment, effective June 3, 2019, with no estimated return date. ECF No. 44-2 at 3. Plaintiff chose this effective date because she had been absent since May 31, 2019, her last recorded day of work, to receive treatment for symptoms associated with vertigo. *Id* at 2; ECF No. 48-1 at 215. On June 13, 2019, Johnson approved Plaintiff's request, stating that: "In regard to your return to work date, although your LOA request is approved, we may need to fill your position while you are out and so there is no guarantee that a position will be available upon your return. Please be sure to touch base with me every month to let me know how you're doing and as we get closer to the date when you're able to return to work we will have more information about your current position availability or other open positions."[1] *Id*. at 3.

Plaintiff did not include a specific anticipated return to work date in her leave of absence request. *Id*. On June 19, 2019, Plaintiff was notified that because her leave of absence was not protected by federal, state, or local law, her health benefits coverage would continue for 30 days following the last day she worked and, "[a]fter those 30 days, coverage [would] continue until the end of the month in which the 30th day occurs." *Id*. at 4. After this period elapsed, Plaintiff

---

[1] Plaintiff was not eligible for Family and Medical Leave Act ("FMLA") protections because Defendant did not meet the threshold number of employees to be covered by the FMLA. *Id*. at 3; 29 C.F.R. § 825.104(a) ("An employer covered by the FMLA is any person engaged in commerce or any industry or activity affecting commerce, who employs 50 or more employees […].").

4

remained eligible to obtain coverage through Continuation of Health Coverage ("COBRA"). *Id*. Plaintiff's benefits coverage through Defendant ended on August 1, 2019, in accordance with the above timeline. *Id*.

In June 2019, Plaintiff spoke with Boller regarding her status and treatment, but did not discuss a specific return date during the conversation. *Id*. From July to August 2019, Plaintiff provided Pettitt with periodic status updates, but never included an anticipated return to work date. *Id*. at 5. On August 17, 2019, Lora Shealy, Defendant's Human Resources Manager, asked Plaintiff if she could provide an estimated date, but Plaintiff replied that she "wouldn't even dare to take a guess [.]" *Id*. Shealy testified that Plaintiff's reply "implied to me that she had no idea when she would be returning to work [.]" *Id*.

During Plaintiff's absence, Pettitt performed Plaintiff's Accounts Payable duties and responsibilities. *Id*. at 6. In early July 2019, Pettitt contacted Boller and requested assistance because he claimed he "could not continue performing such work in addition to his own duties and responsibilities." *Id*. at 6-7. On or about July 12, 2019, Defendant initiated a formal process to hire a temporary employee to fill the only Accounts Payable position and transfer the position to North Carolina; shortly thereafter, Defendant hired a temporary employee to fill the position, during Plaintiff's absence. *Id*. at 7. In early September 2019, the temporary employee was hired as a permanent employee in the Accounts Payable position, approximately three and one-half months after Plaintiff's leave of absence began, and approximately three weeks after Plaintiff's August 17, 2019 message to Shealy that she could not provide an anticipated return to work date. *Id*. at 7-8.

On September 13, 2019, Plaintiff provided Shealy with an anticipated return to work date of December 1, 2019, with supporting documentation from her health care provider. *Id*. at 8.

Shealy did not inform Plaintiff at that time that Defendant had decided to fill the Accounts Payable position on either a temporary or permanent basis. *Id*. at 9. In November 2019, Plaintiff contacted Shealy to inform her that she was ready to return and included a request for a reduced schedule of 30-32 hours per week and the ability to work remotely. *Id*. at 9. During a phone call on November 21, 2019, Shealy informed Plaintiff that Defendant had filled her position with a permanent employee and that there was no position for her to return to. *Id*.

On December 9, 2019, Plaintiff filed a discrimination charge with the New York State Division of Human Rights. ECF No. 1-3 at 2. Plaintiff received her Right-to-Sue letter in November 2020. ECF No. 1-4. On February 22, 2021, Plaintiff commenced this action against Defendant. ECF No. 1.

## DISCUSSION

### I.     Americans with Disabilities Act and NYSHRL Claims

Plaintiff argues that Defendant (i) discriminated against her by terminating her employment because of her disability and (ii) failed to reasonably accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*, and the NYSHRL. ECF No. 1. For the reasons explained below, Plaintiff's ADA and NYSHRL claims, as they relate to the initial leave request, must be dismissed. Plaintiff's ADA and NYSHRL claims, as they relate to the requests for an extension of leave, reduced work schedule, and the ability to work remotely may proceed.

"Title I of the ADA prohibits employers from discriminating again[st] any 'qualified individual with a disability because of the disability of such individual' in regard to any aspect of employment." *Dansler-Hill v. Rochester Inst. of Tech*., 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case for disability discrimination under

6

the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004). The same requirements apply to Plaintiff's NYSHRL claim. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015); see also *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law … is governed by the same legal standards as govern federal ADA claims.").

Thereafter, under *McDonnell Douglas*, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See Benson v. Family Dollar Operations, Inc.*, 755 F. App'x 52, 56 (2d Cir. 2018) (summary order); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the defendant satisfies this burden, the plaintiff must present evidence that the articulated reason was a pretext for discrimination. *Id.*; *Borders v. Goodyear Dunlop, N.A.*, No. 17-CV-1159-FPG, 2020 WL 210056, at *7 (W.D.N.Y. Jan. 14, 2020).

In addition, employers covered under the ADA have an affirmative duty to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability … unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018). The NYSHRL imposes the same duty on covered employers. *See id*. "To maintain a prima facie claim under the ADA and the NYSHRL for failure to accommodate, an employee must show that: (1) [she] is a person with a disability under the meaning of the ADA or the NYSHRL; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, the employee could perform the essential functions

7

of the job at issue; and (4) the employer has refused to make such accommodations." *Id*. at 368-69 (internal brackets omitted). Claims for failure to accommodate are also governed by the *McDonnell Douglas* burden-shifting analysis. *Borders*, 2020 WL 210056, at *7.

Here, Plaintiff's (i) disability discrimination and (ii) failure to accommodate claims must be dismissed with respect to her initial leave of absence because she cannot show that she was otherwise qualified to "perform the essential functions" of her job with or without reasonable accommodation, nor that Defendant failed to reasonably accommodate her disability. *Jacques*, 386 F.3d at 198; *see also Marr v. T's Fam. Rest./Penfield Fam. Rest.*, No. 22-CV-6565-FPG, 2023 WL 2549609, at *2 (W.D.N.Y. Mar. 17, 2023).[2] Because the third element of each claim is identical, the Court's analysis below applies to each claim. In addition, Plaintiff's (i) disability discrimination and (ii) failure to accommodate claims with respect to her September 2019 request for an extension of her leave of absence and her November 2019 requests for a reduced work schedule and the ability to work remotely may proceed because genuine disputes of material fact exist as to whether such accommodations were reasonable.

### A. Initial Leave Request

It is undisputed that without accommodation, at the time of her leave request, Plaintiff could not perform the essential functions of her job because she required treatment. *See Graves v. Finch Pruyn & Co.*, 353 F. App'x 558, 560 (2d Cir. 2009) (summary order) (employee ordinarily unable to perform job at time leave of absence taken, but leave must enable an employee to perform the essential functions of their position in the "immediate future[.]"). At issue is whether Plaintiff

---

[2] The parties do not dispute the first two elements of Plaintiff's disability discrimination claim: that (1) Defendant was subject to the ADA and (2) Plaintiff was disabled under the ADA. *Jacques*, 386 F.3d at 198. The parties similarly do not dispute the first two elements of Plaintiff's failure to accommodate claim: that (1) Plaintiff is a person with a disability under the ADA and (2) Defendant had notice of Plaintiff's disability. *Berger*, 304 F. Supp. 3d at 368-69.

could eventually perform her essential job functions with reasonable accommodation and whether the requested accommodation, the extended leave of absence sought, was reasonable.

As discussed, on or about June 12, 2019, Plaintiff sought an extended leave of absence from her position, effective June 3, 2019, which was approved with the qualification that Defendant "may need to fill your position while you are out and so there is no guarantee that a position will be available upon your return." ECF No. 44-2 at 3, 8. Plaintiff did not provide a return date in her request, instead estimating that her leave may last "approximately 3 months give or take […] [a]ll depending on how things go with treatment." ECF No. 48-1 at 215. In August 2019, when Shealy asked Plaintiff if she had an estimated return to work date, Plaintiff responded that she "wouldn't even dare to take a guess[.]" *Id*. at 5. Plaintiff did not provide a specific anticipated return date until September 13, 2019, approximately three and one-half months after her last recorded day of work. ECF No. 44-2 at 8. The anticipated return date provided was December 1, 2019, a date approximately six months after her leave began. *Id*. In November 2019, Plaintiff modified her estimated return date and indicated she was ready to return to work, but, as discussed, Defendant had hired a replacement for her position in September 2019. *Id*. at 7-8.

The Court recognizes the difficulties and challenges attendant to Plaintiff's diagnosis and treatment, however, it is well settled that "[r]egular and predictable attendance is 'fundamental to most jobs, … and an employee who cannot get to work does not satisfy the essential requirements of her employment.'" *Ward v. Concentrix Corp.*, 14-CV-6392, 2016 WL 336030, *3 (W.D.N.Y. Jan. 28, 2016) (quoting *Shepheard v. City of N.Y.*, 577 F. Supp. 2d 669, 676 (S.D.N.Y. 2008)). To that end, the ADA does not "require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Mescall v. Marra*, 49 F. Supp. 2d 365, 374 n.18 (S.D.N.Y. 1999); *see also Torres v. New York City Dep't of Educ.*, No. 21-1679,

9

2022 WL 16954360, at *2 (2d Cir. Nov. 16, 2022) (summary order) (holding no reasonable factfinder could conclude that employer failed to reasonably accommodate employee where employee had requested long-term leave of absence). "The duty to make reasonable accommodations does not require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).

Contrary to Plaintiff's argument, Plaintiff's extended leave of absence, until September 12, 2019, the date on which she provided a specific return date, was not a "reasonable accommodation" that would enable Plaintiff to "satisfy the essential elements of her employment" in the "immediate future" because it was indefinite. *Ward*, 2016 WL 336030 at *3; *see also Graves*, 353 F. App'x at 560 ("[R]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question."). As articulated more fully above, Plaintiff's initial leave request was open-ended and its length was not finite or determinable. ECF No. 48-1 at 215. While Plaintiff was not required to provide "an absolute date as to when [her] symptoms [would improve] to the point that [she would] be able to return to work," she was required, at a minimum, to provide some "assurance that [her] requested accommodation would allow [her] to perform the essential functions of her job" in the near future. *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 202 (S.D.N.Y. 1999); *Graves*, 353 F. App'x at 560-61 (employee must show that accommodation sought would allow her to perform essential functions in the near future). Plaintiff's condition notwithstanding, it is undisputed that Plaintiff did not provide Defendant with a specific, anticipated return to work date until approximately three and one-half months after her leave of absence began, and stated in response to an inquiry from Defendant, approximately three weeks

before providing such a date, that she "wouldn't even dare to take a guess at [it] [,]" despite Defendant's statement at her leave's inception that it "may need to fill [her] position" while she was absent. ECF No. 44-2 at 3. In light of Plaintiff's extended absence and the facts and circumstances alleged, Defendant was not required under the ADA to "hold [Plaintiff's] position open indefinitely while [she attempted] to recover" from her disability and is therefore not liable for disability discrimination during the period alleged. *Parker*, 204 F.3d at 338.

Moreover, contrary to Plaintiff's arguments, the record shows that Defendant did not "[refuse] to make" accommodations during this period. *Berger*, 304 F. Supp. 3d at 368-69. Defendant held Plaintiff's position open for approximately three and one-half months before filling the position with a permanent employee, despite the strain her absence may have placed on Defendant's business. During Plaintiff's absence, Pettitt, Plaintiff's supervisor, performed Plaintiff's Accounts Payable duties and responsibilities and, in July 2019, requested assistance from Boller because he claimed he "could not continue performing such work in addition to his own duties and responsibilities." *Id*. at 6-7. Of note, for approximately the entire duration of Plaintiff's employment before her leave of absence, Plaintiff was Defendant's sole Accounts Payable specialist and was responsible for Accounts Payable functions at both Defendant's manufacturing facility in Canandaigua, New York and its corporate headquarters in Huntersville, North Carolina. ECF No. 44-2 at 2. While Plaintiff's treatment and diagnosis may have necessitated absence from full-time employment, the ADA and NYSHRL did not require Defendant to hold Plaintiff's job open indefinitely without any assurance from Plaintiff that her leave of absence would enable her to return to work in the near future. *See Parker*, 204 F.3d at 338; *see also Graves*, 353 F. App'x at 560. This aspect of Defendant's Motion for Summary Judgment is accordingly granted.

11

### B. Extension Request and Additional Requests

Plaintiff claims that Defendant's failure to extend her leave until December 1, 2019, and its rejection of her additional requested accommodations of a reduced, 30-32 hour per work week and the ability to work remotely—each requested in November 2019—constitute disability discrimination and failure to accommodate under the ADA. For the reasons set forth below, Defendant's motion for summary judgment is denied with respect to these claims.

### i. Extension Request

On September 13, 2019, Plaintiff provided an anticipated return date of December 1, 2019 and Plaintiff's employment with Defendant ended sometime in early September 2019 when a permanent replacement was hired to fill her former position. ECF No. 44-2 at 7-8. In dispute is whether Defendant received notice of Plaintiff's anticipated return date before the permanent replacement for Plaintiff's position was hired and Plaintiff's employment was effectively terminated. Plaintiff claims that the hiring of the replacement was not finalized until after September 13, 2019, primarily because at that time the replacement employee was not yet provided with an offer letter, while Defendant contends that an internal decision to hire a permanent replacement was made in principle prior to September 13, 2019. ECF No. 44-1 at 6; ECF No. 48-2 at 11-12; ECF No. 44-3 at 162 (email exchanges between Human Resources employees dated September 13, 2019 discussing "time to type offer letter"); *Id*. (email exchange stating "green light" to hire permanent replacement given before Plaintiff's notice). This disagreement as to the timing of Plaintiff's discharge amounts to a genuine dispute of material fact bearing upon the reasonableness of the accommodation sought because when Plaintiff provided a specific, anticipated return date on September 13, 2019, her leave of absence was no longer "indefinite," as a matter of law. *Graves*, 353 F. App'x at 560. On September 13, 2019, Plaintiff requested a finite,

determinable extension of leave to recover from her condition. In addition, Defendant has proffered no evidence that it could not retain a temporary employee in her absence or that doing so during this period would have presented an "undue hardship" such that it would have been unreasonable. *Laguerre*, 2022 WL 728819, at *4. While Plaintiff's return date would have extended her leave of absence from approximately three and one-half months to approximately six months, Plaintiff's notice of an estimated return date may have rendered her requested leave of absence a "reasonable accommodation" because it was no longer "indefinite" and may have provided the requisite "assurance" that it would enable her to perform the essential functions of her job in the "near future," assurance that was not previously provided. *Powers*, 40 F. Supp. 2d at 202; *Ward*, 2016 WL 336030 at *3; *Graves*, 353 F. App'x at 560-61. Accordingly, viewing the facts in the light most favorable to Plaintiff, summary judgment for Defendant is improper on this issue of whether Plaintiff's requested leave extension was a "reasonable accommodation" in both the (i) disability discrimination and (ii) failure to accommodate contexts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Turning to the fourth element of Plaintiff's disability discrimination claim, Plaintiff has established that she may have "suffered an adverse employment action because of her disability [,]" and has therefore sufficiently established a prima facie case for disability discrimination. It is well settled that termination is an "adverse employment action." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Plaintiff has proffered statements from Defendant that "give rise to an inference of discrimination" such that the adverse action suffered may have occurred "because of" her disability. *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order). Namely, Pettitt stated, in the context of discussions regarding a transfer of the Accounts Payable position to North Carolina, that such a change "would be a large negative impact on

13

morale in NY because it would be directly linked to removing a person due to a medical problem" and that "[Plaintiff's] medical condition has [sic] creates a real issue in making any decision[.]" ECF No. 44-3 at 144, 147.  It is unclear whether such statements and the sentiments expressed bore directly upon Defendant's decision to later hire a permanent replacement, irrespective of the location transfer, but the Court, at the summary judgment phase, is not to "weigh evidence" and must "eschew credibility assessments."  *Angulo v. Nassau Cnty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015).  At this stage, the Court accordingly finds that such statements give rise to an inference of discrimination for the purposes of establishing a prima facie case.  Because Plaintiff has sufficiently alleged that she suffered an adverse employment action because of her disability, summary judgment for Defendant at this juncture is improper with respect to Plaintiff's claim that she suffered disability discrimination in connection with her extension request.

With respect to the fourth element of Plaintiff's failure to accommodate claim, Plaintiff has presented sufficient evidence that Defendant "refused to accommodate" Plaintiff's disability by allegedly declining to extend her leave and instead filling the Accounts Payable position.  Viewing the facts in the light most favorable to Plaintiff, a genuine dispute of material fact exists as to whether Defendant hired a permanent replacement for Plaintiff's position after Plaintiff provided notice of her return date, as well as whether Defendant ever considered extending Plaintiff's leave and retaining the temporary employee instead of replacing her. Because Defendant may have "refused to accommodate" Plaintiff by filling the Accounts Payable position in lieu of extending her leave of absence, Plaintiff has sufficiently established a prima facie case for failure to accommodate with respect to her leave extension request.

Having determined that Plaintiff has established a prima facie case for disability discrimination and failure to accommodate arising out of Defendant's alleged failure to provide

the accommodation described above, the Court must now determine whether Defendant has proffered a legitimate, nondiscriminatory reason for its actions. *See Benson*, 755 F. App'x at 56 (summary order); *see McDonnell Douglas Corp.*, 411 U.S. 792. If Defendant satisfies this burden, Plaintiff must present evidence that the articulated reason was a pretext for discrimination. *Id.*; *Borders v. Goodyear Dunlop, N.A.*, No. 17-CV-1159-FPG, 2020 WL 210056, at *7 (W.D.N.Y. Jan. 14, 2020).

Defendant claims in somewhat conclusory fashion that the hiring of a permanent replacement for Plaintiff's Accounts Payable position was a legitimate, nondiscriminatory reason for its actions. ECF No. 44-1 at 14. Defendant states that it "made the final decision to permanently fill the Accounts Payable position for business reasons." *Id.* at 15. Defendant further states that this decision was made because "Plaintiff was the sole person completing the Accounts Payable job duties and responsibilities." *Id.* Relatedly, Defendant states that the decision to relocate the position to North Carolina, irrespective of Plaintiff's leave request, was made for "business efficiency purposes" before Plaintiff notified Defendant of her anticipated return date and before Defendant hired a permanent replacement for the position. *See generally* ECF No. 49.

First, Defendant's explanation that the hiring of a permanent replacement for Plaintiff's position is insufficient to satisfy its burden of producing a legitimate, nondiscriminatory reason for its actions because the timing of this hiring in relation to Plaintiff's notice of a return date is in dispute, for the reasons explained above. Moreover, even if it were sufficient, the evidence adduced by Plaintiff, described above, to comprise her prima facie case suffices, without more, to suggest that Defendant's rationale may have been pretext. *See Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999)

15

(plaintiff may show that the proffered reason was merely a pretext for discrimination by presenting additional evidence or by relying on the evidence comprising the prima facie case, without more).

Second, Defendant's claim that relocating the position to North Carolina justified its conduct constitutes a legitimate, nondiscriminatory reason for its actions, but Plaintiff has presented sufficient evidence to suggest that this articulated reason was pretext. As discussed, Pettitt stated, in the context of discussions regarding such a transfer, that such a change "would be a large negative impact on morale in NY because it would be directly linked to removing a person due to a medical problem" and that "[Plaintiff's] medical condition has [sic] creates a real issue in making any decision[.]" ECF No. 44-3 at 144, 147. In addition, in an email dated May 22, 2019, Pettitt stated his view that "the [Accounts Payable] position itself is about the same level of efficiency working from either location." *Id*. at 147. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant's actions were pretext for discrimination and that Defendant failed to accommodate Plaintiff's disability.

For these reasons, Defendant's motion for summary judgment is denied with respect to this aspect of Plaintiff's disability discrimination and failure to accommodate claims.

### ii. Reduced Schedule and Remote Work

With respect to Plaintiff's requests for a reduced, 30–32-hour work week and remote work capacity—each requested in November 2019—Plaintiff has established a prima facie case for failure to accommodate. The parties do not dispute the first two elements of this claim: that (1) Plaintiff is a person with a disability under the ADA and (2) Defendant had notice of Plaintiff's disability. *Berger*, 304 F. Supp. 3d at 368-69. In addition, it is undisputed that Defendant "refused to make" such accommodations because Defendant had hired a permanent replacement for Plaintiff's position and effectively discharged Plaintiff in September 2019. *Berger*, 304 F. Supp.

3d at 368-69. Assuming for the purposes of this Decision and Order that Plaintiff remained entitled to extended leave after she advised Defendant of her anticipated return date and Defendant retained a duty to reasonably accommodate Plaintiff, at issue is, therefore, whether these additional requested accommodations were "reasonable accommodations" that would enable Plaintiff to perform the essential functions of the Accounts Payable position. For the reasons below, the Court concludes that a reasonable juror could conclude that the requested accommodations were reasonable, precluding summary judgment for Defendant as to this aspect of Plaintiff's claims.

"The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015); *Wernick v. Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996) ("Whether or not something constitutes a reasonable accommodation is necessarily fact-specific. Therefore, determinations on this issue must be made on a case-by-case basis."). As a general matter, however, courts have often found that reduced schedules can be reasonable accommodations. *Rinaldi v. Quality King Distributors, Inc.*, 29 F. Supp. 3d 218, 228 (E.D.N.Y. 2014) ("For an employee whose primary difficulty was itself being at work, time off and reduced hours were logical, reasonable accommodations."); *see also Borders v. Goodyear Dunlop*, N.A., No. 17-CV-1159-FPG, 2020 WL 210056, at *8 (W.D.N.Y. Jan. 14, 2020). Similarly, the reasonableness of a remote work accommodation is often a "fact-specific" inquiry. *Laguerre v. Nat'l Grid USA*, No. 20-3901-CV, 2022 WL 728819, at *4 (2d Cir. Mar. 11, 2022).

With respect to Plaintiff's request for a reduced schedule, such an accommodation may have been a reasonable accommodation, for the reasons explained below. Defendant claims that the full-time status of the Accounts Payable position rendered a reduced schedule unreasonable, but Boller testified in response to a query about whether Defendant could have accommodated

such a request as follows: "Q. What about the 30 to 32-hour per week restriction, is that something that the company could accommodate in an accounts payable position? A. Yeah. It would depend on the workload and what it was then and what it is, what it migrated to, but the workload would – I would say yes. We don't have a history of many of that, but it is something we could look into." ECF No. 48-1 at 90.  In addition, Boller testified that: "I don't know what the workload was in 2019[,]" and that he did not "know the level of hours needed for that role at that time." ECF No. 48-1 at 90.  This testimony, alone, is sufficient to create a genuine dispute of material fact as to whether Defendant could have reasonably accommodated Plaintiff's request, despite Defendant's claim that business needs required a full-time employee in the role.  For this reason, Plaintiff's request for a reduced schedule may have constituted a reasonable accommodation Defendant was required to provide under the ADA.

With respect to Plaintiff's request for the ability to work remotely, such an accommodation may too have been reasonable, for the reasons explained below.  Defendant claims that providing such an accommodation would have been unreasonable in part because Pettitt stated in an email sent in May 2019 that "the ability to work remotely is not something that is conducive for a role in Accounts Payable, given the amount of printing, scanning, and direct contact needed for the position to be successful." ECF No. 44-3 at 147.  In addition, Boller testified in response to a query as to whether remote work could be accommodated at the time of Plaintiff's request that: "It wasn't set up that way at that time. We were very much still paper, pen, filing cabinet type of function." ECF No. 48-1 at 92.  Boller stated that: "At the time, that was not our general process." *Id*. at 108. Pettitt, however, testified that the "role of accounts payable could be done potentially remotely with periodic office visits to pick up invoicing [,]" after Defendant's business process changed during the COVID-19 pandemic. *Id*. at 123.  While this evidence suggests that Defendant

may not have been equipped or able to accommodate remote work at the time of Plaintiff's request in November 2019, such a conclusion requires a "fact-specific" inquiry best resolved by a factfinder. *Laguerre v. Nat'l Grid USA*, No. 20-3901-CV, 2022 WL 728819, at *4 (2d Cir. Mar. 11, 2022) (summary order); *see also Noll*, 787 F.3d at 94.

For these reasons, Plaintiff sufficiently establishes a prima facie case for failure to accommodate and disability discrimination with respect to her additional accommodation requests. Turning now to Defendant's proffered nondiscriminatory rationale for its actions, Defendant repeats that the hiring of a permanent employee to replace Plaintiff was its primary reason for its refusal to make or consider such accommodations. As discussed more fully above, because the viability of Defendant's proffered rationale bears directly upon material facts that are in dispute, the Court concludes that Defendant fails to meet its burden at this stage. Moreover, even if Defendant had, Plaintiff has presented sufficient evidence to rebut Defendant's rationale and suggest that Defendant's conduct may have been pretext, as outlined above. Summary judgment is accordingly improper at this stage with respect to Plaintiff's ADA and NYSHRL claims as they relate to Plaintiff's requests for a reduced schedule and the ability to work remotely.

In sum, Defendant's motion for summary judgment is granted in part and denied in part. The portions of Plaintiff's ADA and NYSHRL claims relating to the initial leave request are dismissed. The portions of Plaintiff's ADA and NYSHRL claims relating to her requests for an extension of leave and additional accommodations may proceed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  For the reasons stated herein, Plaintiff's ADA and NYSHRL claims for disability discrimination and failure to accommodate in connection with her requests for a leave of absence extension, reduced schedule, and the ability to work remotely may proceed.

IT IS SO ORDERED.

Dated: June 14, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York